IN THE DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| VALVTECHNOLOGIES, INC. and<br>RHINOITE INC. | §<br>§<br>§ | |
| v. | §<br>§ | Cause No. 4:10-cv-03943 |
| ROBERT B. NORTH AND<br>NORTHMONTE LIMITED, INC. | §<br>§<br>§ | |

# Plaintiff's Second Amended Complaint

## Parties

**1.** Plaintiff Valvtechnologies, Inc. ("VTI") is a Texas for-profit corporation. Plaintiff Rhinoite Inc. ("Rhinoite") is a Texas for-profit corporation.

**2.** Defendant Robert B. North ("North") is an individual and resident of Texas who has made an appearance in this matter.

**3.** Defendant Northmonte Limited, Inc. ("Northmonte") is a Texas for-profit corporation which has made an appearance in this matter.

## Jurisdiction

**4.** This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1338(a), and pendent jursidiction over the Texas state law claims.

**5.** This Court has personal jurisdiction over the defendants. Defendants reside or conduct business in this judicial district.

## Facts

6.     North is the sole inventor listed for the following U.S. Patents: 6,117,493; 6,326,582; and 6,582,126 (collectively "the Patents"), which are attached as **Exhibit 1**, **Exhibit 2**, and **Exhibit 3**, respectively.

7.     North is the sole owner of U.S. Patent No. 6,326,582.

8.     Northmonte Partners, LP is the owner of U.S. Patent Nos. 6,117,493 and 6,582,126.

9.     Northmonte Partners, LP is comprised of the following partners, shown with their ownership percentages : North (50%); VTI (49%); and Northmonte (1%). *See* defendants' Exhibit 5 from the show cause hearing held January 6, 2011, and Mr. North's testimony in **Exhibit 8**, the hearing transcript, page 77, lines 12-22.

10.    On March 30, 2006, North signed an employment agreement (attached as **Exhibit 4**) with VTI.

11.    On June 16, 2010, of his own free will, and without being asked by VTI to resign, North resigned from his employment at VTI. *See* **Exhibit 8**, the hearing transcript, page 46, lines 17-19, page 51, lines 18-20.

12.    Also on March 30, 2006, North granted to VTI a worldwide, irrevocable, royalty-free, exclusive license ("the Patent License", attached as **Exhibit 5**) under the Patents to make and sell (a) certain products ("the Licensed Products") identified in the Patent License, and (b) products made using the methods/processes ("the Licensed Processes") claimed in the Patents.

13.    Pursuant to section 3.1 of the Patent License, the Patent License was "subject to termination as provided in Section 9" of the employment agreement. The

only part of section 9 of the employment agreement dealing with termination of the Patent License was section 9(a).

14. Section 9(a) of the employment agreement stated that the Patent License "shall be deemed canceled and terminated" if North's employment ended before the initial three year period. Because North remained employed at VTI well past the initial three year period, the Patent License could not have terminated pursuant to section 9 of the employment agreement.

15. There was only one other contingency to the exclusive Patent License. Pursuant to section 2.1 of the Patent License, "Three years after the Effective Date, this exclusive license becomes non-exclusive for any Licensed Products or Licensed Processes that VTI has not used."

16. In the hearing before this Court on January 6, 2011, Aart G. Schenau and Kevin J. Crosby testified on behalf of VTI that VTI had made and sold the Licensed Products, and had used the Licensed Processes, before March 30, 2009. *See* **Exhibit 8**, the hearing transcript, page 20, line16 – page 21, line 16, page 43, lines 2-12, page 47, lines 13-25, and page 52, lines 19-25.

17. Also in that same hearing, North admitted that VTI had made and sold the Licensed Products, and had used the Licensed Processes, while he worked for VTI. *See* **Exhibit 8**, the hearing transcript, page 98, lines 5-18.

18. Mr. North had previously testified on direct examination that VTI had made profits in 2007 and 2008 from the Licensed Products, and the Licensed Processes. *See* **Exhibit 8**, the hearing transcript, page 92, line 14- page 93, line 10.

19. Therefore, pursuant to section 2.1 of the Patent License, on March 31,

2009, North's right to convert the exclusive Patent License to a non-exclusive license terminated. That is, on March 31, 2009, VTI became the permanent exclusive licensee of the Patents, with no further contingencies against VTI being the exclusive licensee of the Patents. Accordingly, after March 31, 2009, VTI was the exclusive licensee of the Patents.

20. During his employment at VTI, Mr. North received health benefits that cost VTI at least one million dollars. *See* **Exhibit 8**, the hearing transcript, page 73, line2 – page 74, line 11.

21. In addition to all common-law duties regarding the employer-employee relationship between North and VTI, the employment agreement (attached as **Exhibit 4**) included specifically tailored and reasonable restrictive covenant provisions that restricted North from disclosing VTI's confidential information to third parties, soliciting VTI customers and suppliers, soliciting VTI's employees, soliciting transactions, competing with VTI, and disparaging VTI.

22. After North resigned from his employment at VTI, on September 24, 2010, acting both in his individual capacity, and as President of Northmonte, he sent a letter to Kubota Metal Corporation, stating that such company could be "subject to penalty for ... patent infringement" of the Patents. See the attached **Exhibit 6**, and Mr. North's testimony in **Exhibit 8**, the hearing transcript, page 87, lines 9-19.

23. Then, on October 7, 2010, acting both in his individual capacity, and as President of Northmonte, he sent a letter to ExxonMobil, stating that if ExxonMobil wished to use the process covered by the Patents, they should contact him. See the

attached **Exhibit 7**, and Mr. North's testimony in **Exhibit 8**, the hearing transcript, page 89, lines 2-6.

24. Section 9(b) of Mr. North's employment agreement listed the following four actions that VTI and Mr. North agreed to take if Mr. North was still an employee after three years:

> 9(b) In the event that the Term of Employment is not terminated prior to the completion of the initial three year period, the Company and Employee hereby covenant and agree to take, or cause to be taken, the following actions:
>
> (i) Formation of a new entity with equity ownership and board representation (or other equivalent management representation) to be allocated 60% to the Company and 40% to Northmonte, LP (or other entity wholly-owned by Robert North and Ross Tramonte).
>
> (ii) Execution of a Shareholders Agreement with respect to the new entity (or equivalent arrangement if a non-corporate entity) containing customary transfer restrictions and capital contribution and distribution provisions. The Shareholders Agreement shall also contain restrictIve covenants and proprietary developments provisions applicable to Northmonte Partners, L.P., Robert North and Ross Tramonte on substantially the same terms as set forth in Sections 7 and 8 of this Agreement.
>
> (iii) The Shareholders Agreement shall provide the Company with an option, exercisable at its sole discretion, to purchase the 40% equity ownership of Northmonte Partners, L.P. (or other entity wholly-owned by Robert North and Ross Tramonte) at a price equal to fair market value determined as of the date three years from the date hereof.
>
> (iv) The Company shall contribute and assign to the new entity the Company's rights under the License. Employee shall cause the Licensors under the License to approve such assignment.

25. Mr. North presented no evidence that he had ever presented VTI with the legal documents to form the new entity listed in section 9(b)(1) of the employment agreement, nor with legal documents constituting any form of a Shareholders Agreement listed in section 9(b)(2) of the employment agreement.

**26.** On January 20, 2011, VTI presented defendants with the necessary legal documents to form the new entity, and to fully comply with Mr. North's emplyment agreement. *See* **Exhibit 9**, the email presenting those documents to the defendants' lawyer. Those documents included a Certificate of Formation (*See* **Exhibit 10**, Certificate of Formation), a Shareholders Agreement (*See* **Exhibit 11**, which is Exhibit A to the Shareholders' Agreement, setting forth the required ownership percentages), proposed Bylaws, and an Assignment from VTI of VTI's rights under the Patent License to Rhinoite, the new entity (*See* **Exhibit 12**, VTI's assignment.)

**27.** On January 21, 2011, VTI received the Certificate of Filing from the Texas Secretary of State for Rhinoite Inc., which is the new entity that had been required by Mr. North's employment contract to be formed by the parties to that contract. *See* **Exhibit 13**, the Certificate of Filing from the Texas Secretary of State.

**28.** The parties do not dispute that, on January 13, 2011, pursuant to section 15 of Mr. North's employment contract, the parties unsuccessfully attempted to mediate (with mediator Susan Soussan) their disputes involving the employment contract, but were unsuccessful.

**29.** In section 10 of his employment contract with VTI, Mr. North agreed that even a threatened breach of the employment contract, including the restrictions against his solicitation of VTI's customers, would cause irreparable harm to VTI, and would entitle VTI to injunctive relief.

## Infringement Of The Patents

30.     Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

31.     Because Mr. North remained employed at VTI more than one year past the initial three year period, the Patent License could not have terminated, and did not terminate, pursuant to section 9 of the employment agreement.

32.     Pursuant to section 2.1 of the Patent License, on March 31, 2009, North's right to convert the exclusive Patent License to a non-exclusive license terminated. That is, on March 31, 2009, VTI became the permanent exclusive licensee of the Patents, with no further contingencies against VTI being the exclusive licensee of the Patents.  Accordingly, until January 20, 2011, VTI was the exclusive licensee of the Patents.  Now the other plaintiff, Rhinoite Inc., is the exclusive licensee of the Patents.

33.     Mr. North received adequate consideration for his assignment of the Patents, as set forth in his Patent License to VTI, and for his restrictive employment provisions, as set forth in section 7 of his employment agreement with VTI.

34.     Defendants have infringed, and are now infringing, under 35 U.S.C. § 271, one or more claims of the Patents, by selling, offering to sell, manufacturing, and/or using, within the United States, the Licensed Products and the Licensed Processes, and will continue to do so unless enjoined by this Court.

35.     Defendants have induced and are actively inducing the infringement of, and have contributorily infringed and continue to contributorily infringe, one or more claims of the Patents pursuant to 35 U.S.C. § 271, by (a) causing, urging, encouraging and/or aiding others to infringe the Patents within the United States and/or (b) making,

using and/or selling within the United States one or more components, materials or apparati for use in practicing the inventions claimed in the Patents.  Defendants will continue such unlawful conduct unless enjoined by this Court.

36.     Defendants' infringement of the Patents is willful and deliberate, given that defendants had actual notice of the existence of the patents and their infringement thereof.  Therefore, Plaintiffs request a judgment under 35 U.S.C. § 285 that this is an exceptional case, and therefore also request that Plaintiffs be awarded all of their attorneys' fees, and treble damages.

37.     Defendants' infringement of the Patents has injured VTI's reputation in the marketplace, and is continuing to injure the perception of VTI by VTI's customers.  Defendants' infringement has also injured VTI in other respects, all of which injuries are irreparable.  These irreparable injuries to BOTH Plaintiffs will continue unless enjoined by this Court.

## Breach Of Contract

38.     Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

39.     North and VTI entered into a valid, enforceable employment agreement.

40.     North has breached the employment agreement by the conduct described in the preceding paragraphs.

41.     As a direct and proximate cause of North's breaches, VTI suffered damages, including attorney's fees, which continue to accrue in an amount to be proven in court.

**42.** North's breaches of his employment agreement have injured VTI's reputation in the marketplace, and is continuing to injure the perception of VTI by VTI's customers. North's breaches have also injured VTI in other respects, all of which injuries are irreparable. These irreparable injuries to VTI will continue unless enjoined by this Court.

## Tortious Interference With Existing Contracts

**43.** Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

**44.** VTI has valid contracts with particular customers and business partners.

**45.** Defendants, by selling, offering to sell, manufacturing, and/or offering to license one or more of the Patents, have willfully and intentionally interfered with these contracts. Additionally, Defendants, by disclosing VTI's confidential information to third parties, soliciting VTI customers and suppliers, soliciting VTI's employees, soliciting transactions, competing with VTI, and disparaging VTI, have willfully and intentionally interfered with VTI's contracts.

**46.** The interference proximately caused injury, and continues to cause injury, to VTI.

**47.** VTI has suffered actual damage or loss as a result of Defendants' interference with VTI's contracts.

**48.** Defendants' interference with VTI's contracts has injured VTI's reputation in the marketplace, and is continuing to injure the perception of VTI by VTI's customers.

Defendants' interference has also injured VTI in other respects, all of which injuries are irreparable. These irreparable injuries to VTI will continue unless enjoined by this Court.

## Tortious Interference With Prospective Relations

49. Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

50. There is a reasonable probability that VTI would have entered into business relationships with certain parties within the relevant market including customers or business partners.

51. Defendants, by selling, offering to sell, manufacturing, and/or offering to license one or more of the Patents, have willfully and intentionally interfered with these relationships. Additionally, Defendants, by disclosing VTI's confidential information to third parties, soliciting VTI customers and suppliers, soliciting VTI's employees, soliciting transactions, competing with VTI, and disparaging VTI, have willfully and intentionally interfered with VTI's relationships.

52. The interference proximately caused injury, and continues to cause injury, to VTI.

53. VTI has suffered actual damage or loss as a result of Defendants' interference with VTI's relationships.

54. Defendants' interference with VTI's relationships has injured VTI's reputation in the marketplace, and is continuing to injure the perception of VTI by VTI's customers. Defendants' interference has also injured VTI in other respects, all of which

injuries are irreparable. These irreparable injuries to VTI will continue unless enjoined by this Court.

## Joint and Several Liability

55. Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

56. Defendants are jointly and severally liable for Plaintiffs' injuries and damages because defendants have acted, and continue to act, in concert. Each defendant has acted together, in a joint enterprise with the other defendant. Therefore, both defendants are jointly liable for the total amount of damages under the common law principles of principal/agent liability, joint enterprise liability, and all other bases establishing participatory and vicarious liability. Accordingly, Plaintiffs allege each cause of action in this complaint against both defendants.

## Request for Preliminary Injunction

57. Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

58. Plaintiffs ask this Court to set its request for a preliminary injunction for a hearing and, after a hearing, issue a preliminary injunction against the defendants.

59. Plaintiffs ask this Court to order that defendants, their, agents, servants, employees, and all other persons in privity or acting in concert with defendants, be enjoined and restrained during the pendency of this action and permanently thereafter, from (1) all efforts to sell or offer to sell any products or processes covered by the

claims of the Patents; (2) all efforts to license any of the Patents, or to license the use of any products or processes covered by the claims of the Patents; (3) all efforts to solicit, contract for, or collect royalties as a result of licensing the Patents or any products or processes covered by the claims of the Patents; (4) all efforts to communicate with, solicit, or enjoin customers (or business partners with which Valvtechnologies, Inc. has a current or potential business relationship), and all such employees, agents, or attorneys of such entities, regarding the Patents or any products that incorporate the processes covered by the claims of the Patents; (5) all efforts to manufacture products using the processes covered by the claims of the Patents; and (6) all efforts to solicit, contract for, or obtain manufacturing services from any third party to manufacture products using the processes covered by the claims of the Patents.

60. Plaintiffs' request for a preliminary injunction meets the criteria for determining whether a preliminary injunction will be granted, as set out in *Canal Authority of State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir.1974): (1) a substantial likelihood that the plaintiff will prevail on the merits; (2) a substantial threat that irreparable injury will result if the injunction is not granted; (3) that the threatened injury outweighs the threatened harm to defendants; and (4) that granting the preliminary injunction will not disserve the public interest.

61. As shown in the hearing on January 6, 2011, there is a substantial likelihood that VTI and Rhinoite will prevail on the merits.

62. If Plaintiffs' request for a preliminary injunction is not granted, there is a substantial threat of irreparable injury, because, as shown in the hearing on January 6, 2011, defendants' actions have already resulted in important customers of VTI being

concerned that they might be infringing the Patents, thus damaging VTI's reputation. *See* **Exhibit 8**, the hearing transcript, Mr. Crosby's testimony at page 55, lines 4-13, page 57, lines 5-19, and page 59, lines 18-25.

63. The harm that will result if the preliminary injunction is not issued is irreparable, because VTI's business relies upon (a) the maintenance of its relationships with its current customers and business partners regarding VTI's rights under the Patents, as well as (b) VTI's marketing directed to prospective customers and business partners regarding the Patents. Defendants' actions are causing irreparable harm because such actions are causing VTI severe damage with respect to VTI's relationships with its customers, and such damages may not be repaired if defendants are allowed to continue with their unlawful acts.

64. The threatened injury outweighs the threatened harm to defendants, because the defendants have no ongoing business, have no manufacturing capacity, and presented no evidence at the hearing on January 6, 2011, that they have any investors who have invested money to enable the defendants to do any manufacturing whatsoever. Moreover, VTI is willing to post whatever bond the Court decides is proper.

65. Granting the preliminary injunction will not disserve the public interest, because the public has a strong interest in enforcing the rights of the exclusive licensees of patents.

66. At the hearing on January 6, 2011, all four criteria for a preliminary injunction were demonstrated to be met. Thus, a preliminary injunction should issue. *Mississippi Power & Light v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985) (affirming grant of preliminary injunction when all four criteria were met).

## Request For A Permanent Injunction

67. Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

68. Plaintiffs ask this Court to set their request for permanent injunction for a full trial on the merits and, after the trial, issue a permanent injunction against defendants.

## Damages

69. Plaintiffs seek to recover all out-of-pocket losses they have sustained. In addition, Plaintiffs have sustained actual damages including direct and consequential damages, as well as special damages, as a result of defendants' acts, including, but not limited to, loss of profit; loss of business opportunity; loss of investment opportunity; and damages related to Plaintiffs' inability to enjoy the use and benefit of the exclusivity of its license of the Patents.

70. Plaintiffs request an award of damages, including lost profits resulting from the defendants' patent infringement, but in no event less than a reasonable royalty.

71. In addition to Plaintiffs' actual damages, Plaintiffs are entitled to recover enhanced and exemplary damages. Defendants willfully infringed the Patents. Defendants' conduct was done fraudulently, knowingly, with actual awareness, malice and intent, or with such an entire want of care as to indicate that the acts and omissions in question were the result of conscious indifference to the rights and welfare of VTI.

72. Finally, Plaintiffs request prejudgment interest on all elements of damages incurred in the past as provided by law; post-judgment interest on the judgment rendered in this case at the legal rate, until paid in full, and costs of court.

## Attorney's Fees

73.     Due to defendants' conduct, it has been necessary for Plaintiffs to employ counsel to prosecute this action on its behalf.  Accordingly, Plaintiffs seek recovery of their attorney's fees and reasonable costs from defendants.

Wherefore, Plaintiffs pray that the Court:

a.  Upon a preliminary injunction hearing in this matter, enter a preliminary injunction as set forth in the attached proposed preliminary injunction order;

b.  Enter a permanent injunction, ordering that defendants, their agents, servants, employees, and all other persons in privity or acting in concert with defendants, be permanently enjoined and restrained from further infringement of the Patents;

c.  Enter an order requiring that defendants, jointly and severally, account to Plaintiffs for any and all profits derived by defendants, and for all damages sustained by Plaintiffs by reason of defendants' acts complained of herein;

d.  Award Plaintiffs compensatory damages in an amount to be determined for defendants' acts complained of herein;

e.  Award Plaintiffs exemplary damages in an amount to be determined for the willful, deliberate, and malicious acts of defendants;

f.  Award Plaintiffs their reasonable attorney's fees and costs of suit; and

g.  Award Plaintiffs such other and further relief, legal and equitable, as this Court may deem just and appropriate.

                                                                          Respectfully submitted,

Dated: January 25, 2011                  s/ Tim Headley
                                          Tim Headley, attorney-in-charge
                                            State Bar No. 09325210
                                            S.D. Texas Bar No. 1003
                                            7941 Katy Fwy., Suite 506
                                            Houston, Texas 77024-1924
                                            Phone:       713 467 8500
                                            Fax:          713 467 8501
                                            Tim.Headley@HeadleyIPLaw.com

## Certificate of Service

Pursuant to section 9B of the "Administrative Procedures for Electronic Filing in Civil and Criminal Cases", dated January 1, 2007, I certify that on the date shown above, service on all known Filing Users will be automatically accomplished through the Notice of Electronic Filing. At this time, there is no party or counsel who is not a Filing User, so service was not accomplished in any other manner. Pursuant to section 6D, I further certify that this document is not being filed under seal, nor is it being filed under any other exception to the requirement for electronic filing of all documents.

                                                                          /s Tim Headley